IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISRAEL RAMONE HUDSON                    Case No. 3:14-cv-00544-MA

           Plaintiff,               OPINION AND ORDER

   v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

           Defendant.

GEORGE J. WALL
1336 E. Burnside St., Suite 130
Portland, OR 97214

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Israel Ramone Hudson seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403 and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on May 8, 2006, alleging disability beginning May 31, 2005, due to chronic pain in his arm as well as paranoia and depression. Plaintiff last met the insured status requirements for a DIB application on June 30, 2006.

On March 23, 2009, plaintiff appeared at a hearing with his attorney and testified. Plaintiff's girlfriend, Quantisha Barber, medical expert (ME) Robert H. Bigley, M.D., and vocational expert (VE) Gail Young also testified. The ALJ held supplemental hearing on May 26, 2009, at which plaintiff and Dr. Bigley testified. Paul Morrison, VE also testified at this second hearing. The ALJ issued an unfavorable decision on June 26, 2009. Tr. 198. Plaintiff appealed to the Appeals Council, which granted review and issued a

January 29, 2010 order remanding the case to the ALJ. Tr. 211. At a December 13, 2010 hearing, plaintiff appeared with his attorney and testified. Tr. 86. David R. Rullman, M.D., ME and Carolyn Kay Wise, VE, also appeared and testified. Subsequently, the ALJ issued an unfavorable decision on December 20, 2010. Tr. 214. Plaintiff appealed, and Appeals Council granted review and issued an order again remanding the case to the ALJ on December 8, 2011.

On February 12, 2013, plaintiff appeared at a hearing with his attorney and testified. Tr. 36. William U. Weiss, Ph.D., ME and Jenipher Gaffney, VE, also testified. The ALJ issued a partially-favorable decision on February 28, 2013, finding plaintiff disabled as of November 3, 2011. Tr. 11. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's February 28, 2013 decision became the final decision of the Commissioner for purposes of review.

Born in 1981, plaintiff was 31 years old on the date of the ALJ's adverse decision. Plaintiff has an eleventh grade education level. Plaintiff has no past relevant work.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec.*

*Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability, May 31, 2005. At step two, the ALJ found that as of May 31, 2005, plaintiff had the following severe impairments: morbid obesity; status-post gunshot wound to the neck from a 2002 shooting; marijuana abuse; and alcohol abuse.[1] The ALJ further found that as of November 3, 2011, plaintiff also had the severe impairment of post-traumatic stress disorder (PTSD). At step three, the ALJ found that from May 31, 2005 through November 2, 2011, plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment. The ALJ further found that on November 3, 2011, plaintiff's severe impairment of PTSD meets Listing 12.06 (Anxiety Related Disorders). Tr. 25-26; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (hereinafter Listing 12.06).

---

[1] The ALJ was not entirely clear on whether he found plaintiff's post-traumatic stress disorder severe at step two. However, plaintiff does not challenge the ALJ's step two finding, and the ALJ included mental limitations in the RFC finding. Tr. 20-21.

The ALJ assessed that from May 31, 2005 through November 2, 2011, plaintiff has a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he can lift and carry up to ten pounds frequently and up to 20 pounds occasionally, and sit, stand, and walk up to six hours in each activity (cumulatively, not consecutively) in a normal eight-hour workday with normal breaks; he can frequently climb stairs and ramps, but due to his right arm/shoulder complaints, he cannot climb ropes, ladders, and scaffolding. Plaintiff can also occasionally balance, stoop, kneel, crouch, and crawl. Because of his longstanding history of being prescribed Vicodin, plaintiff is limited to simple routine work. Due to his worsening PTSD symptoms, plaintiff is limited to work with no contact with the general public and no close interaction with co-workers.

At step four, the ALJ found plaintiff has no past relevant work. At step five, the ALJ concluded that prior to November 3, 2011, considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as room cleaner, laundry sorter, and bench assembler. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from May 31, 2005 through November 2, 2011. The ALJ further found that beginning November 3, 2011, plaintiff's PTSD

meets the criteria of Listing 12.06. Thus, the ALJ concluded that plaintiff has been under a disability under the Social Security Act from November 3, 2011 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate plaintiff's testimony; (2) the ALJ failed to properly evaluate the opinion of examining physician Joseph Balsamo, Psy.D.; and (3) the ALJ failed to properly evaluate the lay testimony of Quantisha Barber.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*,

359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.    **The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

A.    **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.12629. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not

7 - OPINION AND ORDER

arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

**B. Analysis**

At the March 23, 2009 hearing, plaintiff testified that he experiences pain in his neck and right arm. Tr. 157-58. Plaintiff testified that lifting and picking up objects with his right arm irritates his arm, and he experiences a tingling feeling in his arm and fingers. Tr. 158. Plaintiff also testified that he experiences headaches approximately four times a week, lasting 65 percent of the day. Tr. 161. Plaintiff further testified that he experiences a shooting pain down his right leg, which causes the whole right side of his body to shut down. Plaintiff stated that this pain occurs twice a week and requires him to rest when it occurs. Tr. 162.

At the December 13, 2010 hearing, plaintiff testified that he has trouble preparing meals for himself and is unable to fully use his right arm when cooking. Tr. 96-97. Plaintiff also testified that he has difficulty concentrating on a television program he has

watched. Tr. 100-01. Plaintiff testified that he has difficulty carrying on conversations with people and is often distracted by his pain and depression. Tr. 105-06. At the most recent hearing on February 12, 2013, plaintiff testified that a typical day for him consists of waking up and relying on his friend to drive him around to complete his errands. Tr. 53.

In a September 5, 2006 Function Report, plaintiff indicated that he has no difficulty with performing personal care such as showering or dressing. Tr. 557. Plaintiff also noted that he goes outside two to three times a week but that anytime he goes outside, he experiences significant paranoia. Tr. 559. Plaintiff reported that he experiences pain after repetitively lifting 20 pounds and feels lightheaded after standing for a prolonged period. Tr. 561. Plaintiff noted that he can pay attention for a while and has no difficulty completing activities such as finishing a movie or completing conversations. *Id.*

In a Pain Questionnaire, plaintiff reported that he experiences a constant pain in his neck, shoulder, chest and right arm; the pain increases with movement in his arms or prolonged standing. Tr. 585. Plaintiff further noted that he can tolerate three to four hours of activity before needing to rest. Tr. 586.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that cause symptoms resulting in some limitations on work activity, but his subjective complaints

and alleged limitations are not fully credible prior to November 3, 2011. Tr. 21.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine his subjective complaints. As discussed below, the ALJ also provided two unconvincing reasons for discrediting plaintiff's allegations of pain. However, the other three reasons adequately support the ALJ's credibility determination.

### 1. exaggeration of symptoms

The ALJ cited to evidence in the record suggesting that plaintiff is exaggerating his symptoms. The exaggeration of symptoms is an appropriate factor in determining credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)(ALJ appropriately discredited claimant's testimony on the basis of her tendency to exaggerate).

As the ALJ correctly discussed in his decision, Peter Okulitch, Ph.D. noted in an October 19, 2006 consultative examination that plaintiff was exaggerating his physical and psychological symptoms; Dr. Okulitch also noted that plaintiff might have financial incentives for such exaggeration. Tr. 22, 778. For example, Dr. Okulitch noted that he observed no evidence of pain or discomfort in plaintiff's movements. Tr. 776. Dr. Okulitch noted entirely normal examination findings including intact short and long-term memory, an ability to perform serial seven

calculations, and average stream of mental activity. Tr. 777. In fact, Dr. Okulitch assigned plaintiff a Global Assessment Function (GAF) score of 65.[2]

The ALJ also cited to the October 19, 2006 consultative examination by Christopher Komanapalli, M.D., who reported poor effort on the part of the plaintiff during the examination. Tr. 772. Dr. Komanapalli observed that plaintiff was able to easily transfer from a chair to the examination table, walk to the examination room without difficulty, and sit comfortably. Tr. 772. Specifically, Dr. Komanapalli documented normal examination findings and opined that plaintiff could perform medium level work. Tr. 772-74. Furthermore, the ALJ noted another consultative examination on February 7, 2007, by Duane D. Kolilis, Ph.D., who also noted a lack of pain behavior from plaintiff. Tr. 22, 816.

Moreover, other evidence in the record further supports the ALJ's finding of symptom exaggeration. For example, during a face-to-face interview for his disability application in the social security field office, the claims representative noted that he observed no visible pain behavior from plaintiff and indicated that

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 61-70 indicates some mild symptoms (e.g. depressed mood or mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV), p. 31-34 (4th ed. 2000).

plaintiff moved both arms and his neck and walked without any difficulty. Tr. 547. The interviewer further noted that plaintiff reported that his doctor stated that plaintiff would "probably be paralyzed in about a month." *Id.* Indeed, in a November 14, 2006 Psychiatric Review Technique assessment, nonexamining physician, Dorothy Anderson, Ph.D., referred to plaintiff's field office interview as evidence that plaintiff is not entirely credible. Tr. 793. The ALJ's finding of plaintiff's symptom exaggeration is supported by substantial evidence in the record. Thus, I conclude that the ALJ appropriately discredited plaintiff on this basis.

## 2. activities of daily living

As the ALJ correctly noted, plaintiff's variety of activities of daily living are inconsistent with the level of disability he alleges. For example, the ALJ noted that plaintiff described a typical day as involving waking up, getting ready and going out with his friend to complete errands. Tr. 22, 53. The ALJ also noted that plaintiff sits out on his porch on a daily basis and occasionally goes to a park for a picnic or goes out to lunch. The ALJ stated that Dr. Kolilis opined that these activities were inconsistent with plaintiff's allegations of significant paranoia to the point that he alleged a fear of leaving his house. Tr. 19, 99, 814-815. Plaintiff also alleged significant pain in his right arm, shoulder and neck. Tr. 585-86. Yet, the ALJ noted that plaintiff participated in community service and clean-up at PGE

Park after games. Tr. 23, 873, 968. Indeed, plaintiff reported to his treating physician that his community service involved gardening and yard work. Tr. 873.

While a claimant need not be completely incapacitated to be eligible for disability, here the record shows that plaintiff's activities are fairly extensive. As the ALJ correctly stated, plaintiff's own functioning does not support the frequency, nature, and severity of his alleged pain and limitations. For example, plaintiff testified at the 2010 hearing that he has difficulty concentrating, but a September 2010 treatment note indicated that plaintiff is attending school three full days a week to obtain his General Education Degree (GED). Tr. 812, 865. In a September 5, 2006 Function Report, plaintiff reported that he is able to complete activities that he starts such as watching a movie or completing household chores. Tr. 561. Plaintiff also indicated that he has no significant problems with following written or spoken instructions. *Id.* Daily activities demonstrating the ability to concentrate and finish tasks indicates a "capacity that [is] transferable to a work setting." *Molina*, 674 F.3d at 1113.

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because his level of activity is inconsistent with the degree of impairment that he alleges. *See Berry*, 622 F.3d at 1235 (inconsistencies

between self-reported symptoms and activities supported adverse
credibility finding).

### 3. non-responsive and vague testimony

The ALJ cited to plaintiff's inconsistent and vague statements
at the hearing and in the medical record as a reason to discount
his credibility. Tr. 22, 57, 1012. An ALJ may consider prior
inconsistent statements concerning symptoms and "other testimony by
[plaintiff] that appears less than candid in weighing plaintiff's
credibility." *Tommasetti,* 533 F.3d at 1039. Plaintiff argues that
the ALJ mischaracterizes the evidence to support his reasoning. I
agree.

Contrary to the ALJ's finding, plaintiff answered all
questions at the February 2013 hearing. Specifically, the ALJ noted
that plaintiff did not answer a question posed by the ALJ relating
to the size of plaintiff's arms, but the hearing transcript does
not support the ALJ's reasoning:

> Q:   (ALJ questioning) Okay, I'm looking at your arms
>       and your arm muscles are bigger around probably,
>       your upper arms, than my thighs. So what are you
>       doing to keep your arms that big?
>
> A:   I'm not doing anything.
>
> Q:   Tell me.
>
> A:   I mean, I don't work out or nothing, so I don't --
>
> Q:   Okay.

Tr. 21, 48.

It is clear from the hearing transcript that plaintiff answered the ALJ's question. The ALJ's reasoning of plaintiff's allegedly vague and non-responsive behavior is erroneous and unsupported.

### 4. inconsistent statements

The ALJ appropriately discredited plaintiff's testimony on the basis of inconsistent statements regarding his alcohol and marijuana use. As the ALJ reported, at the February 12, 2013 hearing, plaintiff testified that he stopped drinking alcohol and smoking marijuana in 2009. Tr. 57. The ALJ then noted that a May 5, 2012 treatment note indicated that plaintiff acknowledged that he drinks alcohol. Tr. 22, 1012.

The record further supports the ALJ's reasoning. Specifically, plaintiff testified at the May 26, 2009 hearing that he smokes marijuana four times a week, yet plaintiff reported to Dr. Kolilis that he only smokes one to two times a week. Tr. 812. In fact, Dr. Kolilis diagnosed plaintiff with cannabis dependence. Tr. 815. Plaintiff also reported to Dr. Kolilis that he "never touched alcohol." Tr. 812. In contrast, plaintiff testified to at least occasional consumption of alcohol at the 2013 hearing and in reports to multiple consultative examiners. Tr. 57, 771, 776, 808, 1012. The ALJ's findings are supported by the record. Thus, I conclude that the ALJ appropriately discredited plaintiff on the basis of inconsistent statements.

### 5. failure to seek treatment

An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, lack of medical treatment due to an inability to afford medical treatment does not support an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ cites to plaintiff's lack of mental health treatment despite endorsing symptoms of PTSD. Tr. 22. The ALJ noted that plaintiff did not seek mental health treatment from May 31, 2005, the alleged onset date of disability, through November 2, 2011. Tr. 22. The ALJ's reasoning is not supported by substantial evidence in the record.

As plaintiff correctly contends, the ALJ erroneously concluded that plaintiff never sought any treatment for his PTSD until July 2011. Tr. 18. The medical record indicates that plaintiff was prescribed Fluoxetine in May 2010 by treating physician, Gwen Casey-Ford, M.D. (Tr. 883). Dr. Casey-Ford also noted that plaintiff was receiving counseling through a program at the shelter. The medical evidence indicates that plaintiff continued to receive treatment for PTSD and depression on a consistent basis from May 2010 through July 2012. Tr. 936-999, 1048-1074. For example, in March 2012, plaintiff's therapist noted symptoms of paranoia and increased the dosage of Saphris, a psychiatric medication.

Plaintiff further argues that his lack of medical insurance for most of the relevant period adequately explains a lack of mental health treatment. I disagree.

The evidence in the record is ambiguous regarding plaintiff's health insurance status for the relevant period. A June 2004 emergency room treatment note indicated that plaintiff was covered under an Aetna health insurance plan through his father. Tr. 751. In a December 5, 2010 treatment note, Dr. Casey-Ford indicated that plaintiff is without resources to pay for Cymbalta but can apply for the Lily Cares program. Tr. 963. At the February 12, 2013 hearing, plaintiff testified that he was on the Oregon Health plan but that his medical coverage was suspended in 2012. Tr. 44, 58. Plaintiff further testified at the 2013 hearing that he was still receiving pain medications from the Old Town clinic; plaintiff indicated that he was borrowing money from friends to pay for the medications. Tr. 58. Based on plaintiff's own testimony, it appears that plaintiff had health insurance coverage prior to 2012, but the record is unclear as to whether plaintiff had coverage for the entire period from 2005 to 2012. Because of the ambiguity in the record, I conclude that the ALJ's reason that plaintiff failed to seek medical treatment as a basis to discount plaintiff's testimony is not supported by substantial evidence.

In conclusion, although the ALJ's credibility reasoning does contain two errors, these errors do not invalidate the ALJ's

overall adverse credibility finding. The ALJ's remaining reasons, when taken together, constitute clear and convincing reasons, supported by substantial evidence to discount plaintiff's testimony. Therefore, I conclude that the ALJ's errors are harmless. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on...credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1195-97); *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**II.**    **The ALJ Did Not Err in Crediting Dr. Weiss's Opinion over Dr. Balsamo's Opinion**

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining

physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan*, 242 F.3d at 1148. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ failed to discuss and provide specific and legitimate reasons for discounting the opinion of examining physician, Joseph Balsamo, Psy.D. with respect to plaintiff's onset date of disability. On November 3, 2011, Dr. Balsamo examined plaintiff in connection with his current disability application. Dr. Balsamo noted that plaintiff appeared notably anxious and mildly depressed and exhibited a limited range of emotional expression. Tr. 927. Dr. Balsamo also noted that plaintiff demonstrated impaired short-term and working memory, an average to low average fund of general knowledge, and intact attention and concentration. *Id.* Plaintiff reported to Dr. Balsamo that the man who shot him was recently released from prison and had returned to the community, and Dr. Balsamo opined that this further

19 – OPINION AND ORDER

contributed to his ongoing anxiety. Tr. 924. Dr. Balsamo diagnosed plaintiff with PTSD and assessed a GAF of 41.[3]

In his examination report, Dr. Balsamo provided a detailed opinion regarding plaintiff's mental functioning. Specifically, Dr. Balsamo opined that plaintiff's "greatest challenge lies in his inability to tolerate a normal level of social interaction." Tr. 930. Dr. Balsamo also opined that plaintiff's symptomatic reactions in social situations markedly interfere with his ability to interact with supervisors, coworkers or the general public. *Id.* Dr. Balsamo opined that plaintiff's symptoms and significant social limitations have existed since 2002.

In finding that plaintiff meets the criteria of Listing 12.06, the ALJ agreed with Dr. Balsamo's examination findings and opinion that plaintiff had significant mental limitations and assigned this opinion "great weight." Tr. 26-27. However, the ALJ also relied on the February 12, 2013 hearing testimony of the medical expert, William Weiss, Ph.D., who opined that plaintiff met the criteria of Listing 12.06 as of November 3, 2011.

Because Dr. Balsamo's opinion was contradicted, the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at

---

[3] A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *DSM-IV* at 32.

1216. In adopting Dr. Weiss's opinion of an onset date of November 3, 2011, the ALJ rejected Dr. Balsamo's onset date of 2002 because Dr. Weiss's opinion is consistent with the objective medical evidence in the record. Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

At the February 12, 2013 hearing, Dr. Weiss testified and opined that plaintiff met the criteria of Listing 12.06, with marked limitations in maintaining concentration, persistence, and pace and social functioning as of November 3, 2011. Tr. 69-70. Dr. Weiss testified that prior to November 3, 2011, the record does not support a finding that plaintiff's mental impairments meet the criteria of Listing 12.06. Tr. 71. Dr. Weiss opined that prior to November 3, 2011, plaintiff had mild limitations in activities of daily living and moderate difficulty in maintaining concentration, persistence, and pace, and social functioning. Tr. 72. In support of his opinion, Dr. Weiss noted that plaintiff did not seek mental health treatment until May 2010 and that prior consultative examinations in 2006 and 2007 did not document significant mental limitations. Tr. 68-71.

Contrary to plaintiff's argument, the ALJ provided a detailed discussion of the medical evidence and concluded that the objective medical evidence supports Dr. Weiss's opinion that plaintiff does not meet Listing 12.06 prior to November 3, 2011. As the ALJ noted,

plaintiff did not seek mental health treatment until four years after applying for disability in 2006. Tr. 18. Plaintiff first established care for mental health treatment in May 2010; in a May 24, 2010 treatment note, Dr. Ford diagnosed depressive disorder and prescribed Fluoxetine, an anti-depressant. Tr. 989-999. Beginning in 2011, plaintiff's treatment notes show a deterioration in mental functioning. For example, in October 2011, plaintiff reported significant nightmares, and the treatment provider noted significant psychomotor slowing and depressed mood. Tr. 1070. Another treatment note in November 2011 noted anhedonia, and that plaintiff continues to be tormented by flashbacks and nightmares. Tr. 1066. In February 2012, a treatment provider noted that plaintiff was positive for paranoia and delusions connected to PTSD. Tr. 1064. This deterioration continued through 2012 and into 2013. *See generally,* 1048, 1050, 1053, 1061. Plaintiff's mental health treatment notes are consistent with Dr. Weiss's opinion that plaintiff meets Listing 12.06 as of November 3, 2011.

In concluding that the record lacks evidentiary support for an onset date prior to November 3, 2011, the ALJ discussed the examinations and opinions of consultative examiners, Drs. Kolilis and Okulitch. In a February 2007 examination, Dr. Kolilis noted that plaintiff appeared well groomed and was a reliable historian. Tr. 18, 19, 813. Dr. Kolilis observed no evidence of psychomotor agitation or retardation and noted that plaintiff exhibited good

memory recall, judgment, and abstract reasoning. Tr. 814. Dr. Kolilis diagnosed cannabis dependence and rule out adjustment disorder with mixed anxiety and depressed mood with a GAF score of 65. As the ALJ noted, Dr. Kolilis specifically opined that plaintiff did not have the criteria to support a diagnosis of paranoia. Dr. Kolilis further opined that plaintiff's "alleged paranoia over being shot again [is inconsistent] with his admission that he sits on the porch on a daily basis." Tr. 19, 814.

The ALJ also cited to the examination and opinion of Dr. Okulitch. As discussed previously, in an October 2006 examination report, Dr. Okulitch noted that plaintiff appeared to exaggerate his physical and psychological symptoms. Tr. 778. Dr. Okulitch noted intact short and long-term memory, adequate judgment and insight, and an ability to perform serial seven calculations without any difficulty. Tr. 777. Dr. Okulitch opined that plaintiff is capable of simple and complex tasks but might have some difficulty interacting with coworkers. Tr. 778. Dr. Okulitch, like Dr. Kolilis, assessed a GAF score of 65.

Moreover, the March 1, 2007 opinion of a non-examining physician, Robert Henry, Ph.D. also supports the ALJ's conclusion that prior to November 3, 2011, plaintiff did not meet the severity of Listing 12.06. Tr. 23. In a Psychiatric Review Technique Form (PRTF), Dr. Henry opined that plaintiff has mild limitations in activities of daily living, mild difficulty in maintaining

concentration, persistence, and pace, and moderate difficulty in maintaining social functioning. Tr. 829. In a Mental RFC Assessment Form, Dr. Henry opined that plaintiff is capable of performing simple routine tasks and should avoid direct contact with the public and close interaction with co-workers. The ALJ gave Dr. Henry's opinion great weight and adopted the assessed mental limitations as part of the RFC finding prior to November 3, 2011. Tr. 21, 23. To be sure, plaintiff does not challenge the ALJ's RFC finding that plaintiff can perform reduced light unskilled work prior to November 3, 2011.

Furthermore, additional medical opinions in the record support the ALJ's crediting of Dr. Weiss's opinion. For example, in the December 13, 2010 hearing, medical expert, David R. Rullman, M.D., opined that plaintiff did not appear to fulfill the necessary criteria to support a diagnosis of PTSD. Tr. 115. In the May 2009 hearing, medical expert, Robert H. Bigley, M.D. opined that plaintiff does not meet a listing on the basis of past psychological evaluations. Tr. 147.

In summary, the ALJ properly credited Dr. Weiss's opinion over Dr. Balsamo's opinion with respect to plaintiff's onset date. Indeed, plaintiff does not challenge the "great weight" given to Dr. Weiss's opinion or the ALJ's evaluation of the opinions of Drs. Kolilis, Okulitch, Henry, Rullman, and Bigley. Because the ALJ's interpretation is rational and is supported by substantial evidence

in the record as a whole, it will not be disturbed. *See e.g.,* *Molina*, 674 F.3d at 1111 (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). Therefore, I conclude that the ALJ provided a specific and legitimate reason supported by substantial evidence to discount Dr. Balsamo's opinion.

### III. Lay Witness Testimony

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout*, 454 F.3d at 1053; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

At the March 2009 hearing, Quantisha Barber, plaintiff's girlfriend, testified that plaintiff's pain limits his ability to walk and that he is in pain approximately 75 percent of the time. Tr. 177. Ms. Barber testified that plaintiff's fingers go numb and he drops items such as cooking utensils. *Id.* Ms. Barber also testified that plaintiff is easily worn out by physical activities such as vacuuming and requires more time to complete such household tasks. Tr. 178. Ms. Barber further testified that plaintiff has crying spells, irritability, and difficulty with memory and concentration. Tr. 180.

25 - OPINION AND ORDER

In the instant action, plaintiff argues that the ALJ committed a reversible error because he failed to discuss the lay witness testimony of Ms. Barber. I disagree.

An ALJ's silent omission of lay testimony is upheld only if the reviewing court "can confidently conclude that no reasonable ALJ when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, the ALJ included limitations pertaining to plaintiff's pain in his arm and shoulder in the RFC assessment, specifically limiting plaintiff to light work and no climbing ropes, ladders and scaffolding. Tr. 21. The ALJ also included a limitation to simple routine work with no contact with the general public or close interaction with co-workers, which addresses Ms. Barber's testimony regarding plaintiff's difficulty with memory and concentration. *Id.* Plaintiff points to no additional workplace limitations described in Ms. Barber's testimony that, if credited, would establish disability. Therefore, plaintiff fails to establish that the ALJ's omission of Ms. Barber's testimony is more than harmless.

Moreover, Ms. Barber's testimony adds no new allegations on behalf of plaintiff. Failure to comment on lay testimony is harmless "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674, F.3d at

1117. Ms. Barber's testimony is similar to that of plaintiff, including allegations of pain and difficulty with memory and concentration. As discussed above, the ALJ gave three convincing reasons, supported by substantial evidence to discount plaintiff's testimony. Specifically, the ALJ found that plaintiff exaggerated his symptoms of pain, and this reason is equally applicable to Ms. Barber's testimony. Thus, the ALJ's error in failing to discuss Ms. Barber's testimony is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

### CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __20__ day of April, 2015.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

27 - OPINION AND ORDER